**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony Garrett DIEMLER, Defendant-
Appellant.**

**No. 73-3714
Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 1974.

Rehearing Denied Sept. 12, 1974.

---

\* Rule 18, 5th Cir., Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Douglas Tinker, Corpus Christi, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BELL, SIMPSON and MORGAN, Circuit Judges.

PER CURIAM:

This appeal is from a conviction for knowingly and intentionally possessing, with intent to distribute, fourteen (14) pounds of marihuana, a Schedule I controlled substance, in violation of Title 21, U.S.C., Section 841(a)(1). Prior to the trial, defendant Diemler moved to suppress the evidence and the Court directed that the motion to suppress be carried with the case. Trial by jury was waived and the case, both as to the merits and as to the motion to suppress, was tried by the Court on April 27, 1973. On May 22, 1973, Diemler was found guilty and the motion to suppress was denied.

The evidence is undisputed and uncomplicated. On October 22, 1972, at 10:45 P.M., a 1965 Volkswagen with Pennsylvania license plates, driven by Diemler, was stopped by Border Patrol Agent Tidball on U.S. Highway 281, 16 miles south of Falfurrias, Texas. The checkpoint was of a temporary type and was operated periodically and in connection with two other checkpoints, one of which was two miles south of Falfurrias, and another which was 32 miles south of Falfurrias, on U.S. Highway 281. The Border Patrol shifted its operation from one point to another to be more effective. There were no side roads around the checkpoint. The towns of Rivera and Encino lie south of the checkpoint between it and the border. The search was at a point 55 to 60 miles north of the border. Several of the towns and cities south of the point on U. S. Highway 281 have connecting east-west roads. The Border Patrol Agent, Tidball, testified that when he flagged down defendant for routine questioning concerning citizenship, he appeared nervous and was reluctant to pull down his window. Tidball then directed Diemler to the side of the road for further inspection. While he was inspecting the trunk, another Border Patrol Agent, Edwards, came up to assist. Agent Edwards examined the backseat area with his flashlight and noticed the seat was two to three inches higher than normal. After opening the door and sticking his head into the automobile, Edwards detected the odor of marihuana. Raising the rear-seat cushion, Agent Edwards discovered seven bricks of marihuana, one of which was badly torn, exposing the marihuana it contained. Edwards' evidence was that he was looking for contraband only when he opened the car door. After discovering the marihuana bricks, Diemler was arrested and advised of his rights.

Appellant's reliance on the reasoning of Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), is of no avail under the facts at hand. The search here occurred on October 22, 1972. In United States v. Miller, 492 F.2d 37 (5 Cir., 1974), a panel of this court held that *Almeida-Sanchez* is not to be applied retroactively to searches which occurred before the date of that opinion, June 21, 1973. However, the search in question was illegal under the pre-*Almeida-Sanchez* law and requires a reversal of the judgment of the district court.

The so-called border search has long been recognized as an exception to both the warrant and probable cause requirements of the Fourth Amendment to the Constitution. United States v. Thompson, 475 F.2d 1359 (5 Cir. 1973);

Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), Anno., 6 A.L.R.Fed. 317 (1971). However, it has also been consistently held that border searches are not entirely exempt from the Fourth Amendment but rather are subject to the requirement that they be reasonable. United States v. Rodriguez-Hernandez, 493 F.2d 168 (5 Cir. 1974); United States v. Warner, 441 F.2d 821 (5 Cir. 1971), cert. den., 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

■ Although the probable cause standard of the Fourth Amendment need not be met, the officer conducting the search must have a reasonable suspicion of illegal activity. United States v. Daly, 493 F.2d 395 (5 Cir. 1974); United States v. Storm, 480 F.2d 701 (5 Cir. 1973); United States v. McDaniel, 463 F.2d 129 (5 Cir. 1972), cert. den., 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973); Morales v. United States, 378 F.2d 187 (5 Cir. 1967); Thomas v. United States, 372 F.2d 252 (5 Cir. 1967); Marsh v. United States, 344 F. 2d 317 (5 Cir. 1965). In addition, the reasonable suspicion must be not merely of any violation, but of a Customs or Immigration violation. United States v. Storm, supra; United States v. McDaniel, supra. See United States v. Solis, 469 F.2d 1113, 1114–1115, n. 2 (5 Cir. 1972), cert. den., 410 U.S. 932, 93 S.Ct. 1375, 35 L.Ed.2d 594 (1973).

■■ It is the government's burden to show the existence of reasonable suspicion of a Customs or Immigration violation. Marsh v. United States, supra. In this case, the record clearly demonstrates that the government has failed to bear its burden of showing any reasonable suspicion of criminal activity. Totally lacking from the record is any fact which might have given rise to a suspicion on the part of the officers of illegal activity. In United States v. Wilson, 492 F.2d 1160 (5 Cir. 1974), the government met this burden in a case involving the same checkpoint [1] as the one involved here by showing that the defendants attempted to elude the Border Patrol. See also Haerr v. United States, 240 F.2d 533 (5 Cir. 1957). This case contains no such evidence.

■ Finally, the government has totally failed to demonstrate any nexus with the border. In Almeida-Sanchez v. United States, supra, it was held that a border search could be conducted only at the border or the functional equivalent thereof. 413 U.S. at 272–273, 93 S.Ct. 2535. This requirement is not applicable here, but some connection or contact with the border must be shown, even though the vehicle itself need not have crossed the border. United States v. Byrd, 494 F.2d 1284 (5 Cir. 1974); United States v. Bursey, 491 F.2d 531 (5 Cir. 1974); United States v. McKim, 487 F.2d 305 (5 Cir. 1973); United States v. Steinkoenig, 487 F.2d 225 (5 Cir. 1973); United States v. Storm, supra; Marsh v. United States, supra.

The government cannot fulfill its burden of demonstrating a nexus with the border merely by showing that many violations occur in the vicinity of the search. As this court held more than a year before *Almeida-Sanchez*, "proximity to the frontier does not automatically place a 100-mile strip of citizenry within a deconstitutionalized zone, with its attendant de-escalation of Fourth Amendment requirements". United States v. McDaniel, supra, 463 F.2d at 132–133.

Therefore, because the government has failed to meet its burden of showing a valid border search even under pre-*Almeida-Sanchez* standards, we conclude that the judgment of the district court must be

Reversed.

---

1. Both checkpoints are described as being on U. S. Highway 281 sixteen (16) miles south of Falfurrias, Texas.