**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Jesus Gonzalez SORIA, Jr.,
Defendant-Appellant.**

No. 73–2485.

United States Court of Appeals,
Fifth Circuit.

Sept. 22, 1975.

Rehearing Denied Nov. 21, 1975.

Thomas Rocha, Jr., San Antonio, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

A jury convicted Soria of possession of 316 pounds of marijuana with intent to distribute, and unlawful possession of a firearm during commission of a felony, violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(2) respectively. He now challenges those convictions contending that both were obtained with unconstitutionally seized evidence. Finding merit to Soria's position, we reverse.

On the afternoon of January 25, 1973, Customs Agent Leonard Williams received information from a confidential informer that "a group of marijuana traffickers in Nuevo Laredo, who had been known in the past to smuggle marijuana concealed in boats and other vehicles, were going to smuggle a load of marijuana that night." Williams ordered surveillance in the area, Customs Agent Lew positioned himself at the "Three Points" intersection in Laredo, Texas,[1] and after about two hours, he saw a pickup truck pulling a boat pass through the intersection and proceed south on Highway 83. Acting on instructions from Williams, Agents Lew and Smith followed the vehicle for about fifteen uneventful miles. Again acting

---

1. "Three Points" is the local term for the intersection of Highways 359 and 83 in Laredo, Texas. From this intersection, Highway 359 runs north to Hebronville, Texas, while Highway 83 proceeds along the Rio Grande River toward Zapata, Texas.

on instructions from Agent Williams, the two agents stopped Soria's vehicle at a point about one and a half miles from the Rio Grande River, and directed him to get out of the vehicle.[2] They held Soria until Agent Williams arrived and the challenged search occurred.

At the outset, we note that the recent Supreme Court border search decisions do not affect our decision here. The decisions in *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607, 422 U.S. 891, 95 S.Ct. 2590, 45 L.Ed.2d 630 (1975); *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623, 422 U.S. 891, 95 S.Ct. 2590, 45 L.Ed.2d 630 (1975); *Bowen v. United States*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975), and *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), all relate to the operations of Border Patrol agents, not customs officials. *Ortiz* and *Brignoni-Ponce* established standards of conduct for Border Patrol agents after the date of decision in *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The search in question here preceded *Almeida-Sanchez*. In *Peltier* and *Bowen* the Court refused to apply the probable cause requirements for roving patrol and checkpoint searches to those searches conducted before June 21, 1973. The Court in both cases noted the absence of a statutory probable cause requirement and the agents' reasonable reliance on numerous circuit court decisions indicating that immigration officials had unfettered discretion to search any vehicle for aliens within the 100 mile radius of the border. The ef-

fect of the Court's decisions in *Peltier* and *Bowen* is to insulate all pre-June 21, 1973 immigration searches conducted within 100 miles of the border from constitutional challenge.[3]

Customs agents however did not have the same unfettered discretion. Prior to *Almeida-Sanchez* our circuit consistently imposed a reasonable suspicion requirement at points beyond the border itself. *See United States v. McDaniel*, 463 F.2d 129 (5th Cir. 1972), *cert. denied*, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973); *Morales v. United States*, 378 F.2d 187 (5th Cir. 1967); *Thomas v. United States*, 372 F.2d 252 (5th Cir. 1967). *See also Bowen v. United States*, 422 U.S. 916, 95 S.Ct. 2569, 2572 n. 1, 45 L.Ed.2d 641 (1975). Under these circumstances, the rationale of the Supreme Court in *Peltier* and *Bowen* is inapplicable, and we must judge this search under the standards set out in our decisions on customs searches.

Customs agents are charged with preventing the importation of contraband into the United States. Congress has granted the agents broad statutory authority to stop and search for contraband. 19 U.S.C. §§ 482, 1581, 1582. But the Fourth Amendment still imposes a reasonableness requirement on customs searches. *United States v. Bowman*, 502 F.2d 1215 (5th Cir. 1974); *United States v. Warner*, 441 F.2d 821 (5th Cir. 1971); *Morales v. United States*, 378 F.2d 187 (5th Cir. 1967). The determination of reasonableness must be made in light of the facts and circumstances of the individual case. *United States v.*

2. Agents Lew and Smith testified that Soria did not immediately alight from his vehicle when ordered to do so. Agent Smith stated, however, that Soria did get out of the truck when Agent Lew addressed him in Spanish.

3. The Supreme Court's actions on Fifth Circuit cases pending before the Court reinforces this conclusion. The Court vacated judgment in *United States v. Speed*, 497 F.2d 546 (5 Cir. 1974), but denied review in *United States v. Owen*, 493 F.2d 463 (5 Cir. 1974), and *United States v. Phillips*, 496 F.2d 1395 (5 Cir. 1974). *See* 422 U.S. 1056, 1057, 95 S.Ct. 2680, 45 L.Ed.

2d 709, 43 U.S.L.W. 3681–82 (1975). In *Speed* a Fifth Circuit panel had reversed a conviction because the search was not made with reasonable suspicion about the vehicle searched. But the other two cases upheld searches without inquiry into the basis for suspecting the vehicle searched. The Supreme Court decisions in *Bowen* and *Peltier* clearly establish that neither probable cause nor reasonable suspicion was required for a border search for illegal aliens before the date of the *Almeida-Sanchez* decision.

*Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

■ At the border itself, "the agent's statutory authority to search is virtually unfettered except perhaps as to due process concerning the manner, not the cause, of the search." *United States v. Storm,* 480 F.2d 701, 704 (5th Cir. 1973). In the general border area, their authority is not as broad. The Fourth Amendment allows customs agents to stop and search persons and vehicles without a warrant and on less than probable cause. *United States v. Bowman,* 502 F.2d 1215 (5th Cir. 1974); *United States v. Storm,* 480 F.2d 701 (5th Cir. 1973); *Thomas v. United States,* 372 F.2d 252 (5th Cir. 1967). But the agents must have reasonable cause at the time of the search to suspect a violation of the customs laws. 19 U.S.C. § 482; *United States v. Warner,* 441 F.2d 821 (5th Cir. 1971); *Morales v. United States,* 378 F.2d 187 (5th Cir. 1967).

■ Our cases have uniformly required the Government to establish a nexus between the vehicle or person searched and the border. "[A]t the time of the search, the suspect must have had some reasonably direct connection with the border, considering such factors as the cause for the initiation of the search, the distance from the border and the original point of entry, and the time elapsed since entry. See *United States v. Bursey,* 5 Cir. 1974, 491 F.2d 531; *United States v. Steinkoenig,* 5 Cir. 1973, 487 F.2d 225; *United States v. McDaniel,* 5 Cir. 1972, 463 F.2d 129, cert. denied, 1973, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041; *United States v. Warner,* 5 Cir. 1971, 441 F.2d 821, cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58." *United States v. Bowman,* 502 F.2d 1215, 1219 (5th Cir. 1974). That essential nexus is not present in this case.

■ The informer's tip was of the most general nature: "a group of marijuana traffickers in Nuevo Laredo, who had been known in the past to smuggle marijuana in boats and other vehicles, were going to smuggle a load of marijuana that night." The agents had no description of the driver of the vehicle, the vehicle itself, or its destination. They had not seen Soria's vehicle cross the border. Indeed they had no reason to believe it had done so, or had been in contact with persons who had. Soria was heading south *toward the border* and toward Falcon Lake, a well known fishing spot. The vehicle did not engage in any suspicious activity during the period of time agents followed it.[4] There was simply no "reasonably direct connection" between Soria's vehicle and the border that would give the customs agents the authority for this search.

■ Soria's conviction on the firearms count cannot stand for another reason. On that count, the trial judge charged the jury as follows: "So, the elements of the offense as to count three which the government must prove beyond a reasonable doubt, is [sic] simply that the defendant was guilty of the first count, the possession of the marijuana with the intent, and that he was carrying a firearm at the time he did so." As the Second Circuit convincingly demonstrated in *United States v. Ramirez,* 482 F.2d 807, 813–15 (2d Cir.), cert. denied, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973), Congress in enacting 18 U.S.C. § 924(c)(2) clearly intended to punish persons carrying a firearm, without using it, during the commission of a felony only if possession of the firearm is itself unlawful. *See also United States v. Howard,* 504 F.2d 1281 (8th Cir. 1974). The Government in the trial below did not prove that Soria's possession of the weapon was unlawful in itself. Indeed, the trial judge specifically instructed the jury that such proof was unnecessary. The due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to consti-

---

4. The agents testified that Soria did not stop for an estimated one-half mile after they began flashing their lights. But they stopped the vehicle on the open road, and at no time did the driver of the vehicle attempt to elude them.

tute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The Government here did not establish the element of unlawfulness essential to a conviction under 18 U.S.C. § 924(c)(2).

For the above reasons, we find that Soria's conviction for possession of marijuana with intent to distribute, and for unlawfully carrying a firearm during the commission of a felony cannot stand.

Reversed and remanded.

INGRAHAM, Circuit Judge (concurring in part and dissenting in part):

I concur in the reversal of Soria's conviction of Count Three, violation Title 18, U.S.C.A., Sec. 924(c)(2), the firearm count, and respectfully dissent from the majority opinion reversing his conviction of Count One, violation Title 21, U.S.C.A., Sec. 841(a)(1), the count covering the possession of approximately 316 pounds of marijuana.

It is clear that under ordinary circumstances the informant's tip lacked the necessary specificity to provide probable cause to stop and search appellant's vehicle and boat. *Compare Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), with *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Nevertheless, the instant case is controlled by the border search doctrine which authorizes customs agents to search persons and vehicles without probable cause. *United States v. Steinkoenig,* 487 F.2d 225 (5th Cir. 1973); *United States v. Wright,* 476 F.2d 1027 (5th Cir. 1973), *cert. denied,* 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53; *United States v. McDaniel,* 463 F.2d 129 (5th Cir. 1972), *cert. denied,* 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973); *United States v. De Leon,* 462 F.2d 170 (5th Cir. 1972), *cert. denied,* 414 U.S. 853, 94 S.Ct. 76, 38 L.Ed.2d 102; *United States v. Warner,* 441 F.2d 821 (5th Cir. 1971), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58. The agents, although not restricted by the traditional probable cause requirement, are restrained by the Fourth Amendment standard of reasonableness. Agents must predicate their search on at least a "reasonable suspicion" that the vehicle contains contraband. In *United States v. Warner, supra,* this court stated that:

"Federal courts have unanimously interpreted this Congressional grant to mean that Customs agents may stop a person and conduct a 'border search' without first procuring a search warrant or even having probable cause to believe that the person has committed a crime. In the parlance of these decisions, the agents' 'mere suspicion' of probable illegal activity is enough cause to justify a border search."

441 F.2d 821 at 832. The issue in this case, therefore, is whether the customs agents had a reasonable suspicion to believe that Soria's vehicle or boat contained contraband.

The following factors contributed to the agents' suspicions: (1) an informant's tip that drug traffickers from Mexico planned to smuggle a large quantity of marijuana on the night of the search; (2) the smugglers planned to transport the contraband in a boat; (3) proximity to the United States-Mexico border; (4) during the agent's surveillance only one vehicle-boat combination passed the surveillance team; (5) after agents attempted to stop Soria's vehicle, Soria refused to respond to sirens and flashing red lights for about one-half mile; (6) Soria ignored three requests by agents before finally alighting from the car; and (7) Agent Williams recognized Soria to be an individual involved in narcotic operations. Although these factors would not constitute probable cause, the circumstances did provide a reasonable suspicion which is the standard applicable to border searches. *United States v. Steinkoenig, supra; United States v. Wright, supra; United States v. Warner, supra.*

In the recent decision of *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607, 422 U.S. 891, 95 S.Ct. 2590, 45 L.Ed.2d 630 (1975) [43 USLW 5028 at 5030–32] the Supreme

Court recognized several factors that contribute to a "reasonable suspicion": (1) proximity to the border; (2) information relating to an illegal border crossing; (3) behavior of the driver; and (4) appearance of the vehicle under observation. The Court continued its reliance on the "reasonable suspicion" test, but it held that the appellant's apparent Mexican ancestry was in and of itself an inadequate basis upon which to predicate the agent's intrusion.[1]

In the instant case, considering the seven factors enumerated above, the requisites of reasonable suspicion suggested in *Brignoni-Ponce* were satisfied. I believe, therefore, that the search of appellant's vehicle and boat was reasonable under the customs statute, 19 U.S.C. § 482, and the more narrow confines of the Fourth Amendment. *United States v. Steinkoenig, supra; United States v. Warner, supra.*

Additionally, I conclude that the movements of appellant Soria were reasonably related to the border area, thus creating the necessary nexus with the border. *United States v. Steinkoenig, supra,* citing *United States v. Hill,* 430 F.2d 129, 131 (5th Cir. 1970).

In *Steinkoenig* the court stated that "this Circuit has decided that a border crossing is not the *sine qua non* of a valid border search." 487 F.2d 225 at 227. In this case the customs agents suspected that Soria was involved in smuggling activities and stopped his vehicle at a point less than two miles from the International Border. Clearly, appellant Soria's movements were "reason-

ably related to the border area" and therefore satisfied the necessary border nexus. *United States v. Hill,* 430 F.2d 129, 131 (5th Cir. 1970).

Under the standard for determining the constitutionality of searches in border areas prevailing when the search here occurred,[2] I would hold that the district court did not err in refusing to exclude the marijuana and automatic pistol from evidence. Therefore, I would affirm the conviction for possession with intent to distribute 316 pounds of marijuana, a violation of 21 U.S.C. § 841(a)(1).

I agree with the majority's conclusion that the trial court's charge concerning the elements of the third count of the indictment was defective and required reversal of the conviction for unlawful possession of a firearm. *United States v. Ramirez,* 482 F.2d 807, 813–15 (2d Cir. 1973), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). Appellant's failure to object at trial and to raise his claim on appeal is immaterial. *Screws v. United States,* 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

I would affirm the conviction of Count One.

### ON PETITION FOR REHEARING

**PER CURIAM:**

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

**INGRAHAM, Circuit Judge:**

I respectfully dissent from the denial of the petition for rehearing for the

---

1. The Supreme Court recently noted that "the central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary and oppressive interference by government officials." *United States v. Ortiz,* 422 U.S. 891, 895, 95 S.Ct. 2585 at 2588, 45 L.Ed.2d 623 (1975) [43 U.S.L.W. 5026 at 5027]. In *United States v. Brignoni-Ponce,* the Court was unwilling to authorize intrusion "without *any* suspicion of illegal activity." 422 U.S. 873, 882, 95 S.Ct. 2574 at 2581, 45 L.Ed.2d 607 (1975) [emphasis added] [43 U.S.L.W. 5028 at 5031].

In this case, however, the enumerated factors contribute to a reasonable suspicion sufficient to negate arbitrary, oppressive interfer-

ence and to justify a legal intrusion. *United States v. Steinkoenig,* 487 F.2d 225 (5th Cir. 1973); *United States v. Warner,* 441 F.2d 821 (5th Cir. 1971), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58.

2. The search in this case occurred on January 25, 1973, a date prior to the *Almeida-Sanchez v. United States* decision. In *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) [43 U.S.L.W. 4918], the Supreme Court held that *Almeida-Sanchez* is to be applied prospectively only. The legality of the instant search therefore is controlled by the pre-*Almeida-Sanchez* border search doctrine.

reasons and extent stated in my dissenting opinion, *United States v. Soria*, 519 F.2d 1060 (5th Cir. 1975).